UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PIERSON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> M.B. STURGIS, INC., *et al.*, <br><br> Defendants. | Case No. 1:23-cv-01778-JLT-EPG <br><br> FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFFS' MOTION TO REMAND AND APPROVING DEFENDANT WORTHINGTON'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT <br><br> (ECF Nos. 21, 65) <br><br> OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

This products liability case proceeds on claims by Plaintiffs Michael Pierson, individually and as successor-in-interest to the Estate of Katie Pierson, and Courtney Pierson ("Plaintiffs") against Defendants Enerco Group, Inc. ("Enerco") and Worthington Industries, Inc. ("Worthington"), for negligence and strict liability in the death of Katie Pierson following a propane gas explosion. (ECF No. 4-1). Now before the Court is Plaintiffs' motion to remand this case to the California Superior Court, County of Los Angeles, East District, and Defendant Worthington's motion for determination of good faith settlement. (ECF Nos. 21, 65).

For the reasons discussed below, the Court recommends denying Plaintiffs' motion to remand and approving Defendant Worthington's motion for determination of good faith settlement.

///

///

1

## I. BACKGROUND

### A. Summary of the Complaint

Plaintiffs' complaint filed on October 10, 2022, names as defendants M.B. Sturgis, Inc., Enerco Group, Inc., Coloma Food, Inc., Worthington Industries, Inc., Grand Gas Equipment, Inc., and Does 1-50. (ECF No. 4-1).[1] Plaintiffs bring an action for wrongful death, negligence, and strict products liability against Defendants stemming from the death of Katie Pierson. (*Id.* at 2). This action arises from a flash fire and explosion on February 21, 2021, after Ms. Pierson, unaware that the trailer was filled with dangerous levels of propane gas, attempted to turn on a portable propane heater in an enclosed camping trailer. (*Id.* at 3, 22). Ms. Pierson ultimately died from her injuries and Plaintiff Michael Pierson suffered permanent injuries. (*Id.* at 3-4).

Plaintiffs allege Defendant Enerco designed, manufactured, and distributed the portable propane heater that was the ignition source of the explosion. (*Id.* at 5, 22, 29). Plaintiffs allege that Enerco wrongfully and improperly marketed and warrantied its heater as safe for indoor use, failed to give proper instructions and warnings concerning the danger of a fire and explosion when using the heater in an enclosed area, and knew or should have known the heater was defective. (*Id.* at 29-38). Plaintiffs further allege that Enerco's conduct proximately caused the explosion as Michael and Katie Pierson relied on the warranty that the heater was safe for use inside their trailer. (*Id.* at 22).

Plaintiffs allege Defendant Worthington designed, manufactured, and distributed a different propane cylinder ("Worthington Tank") that was connected to a propane-fueled tankless water heater in the trailer at the time of the explosion. (*Id.* at 18, 20, 38). Plaintiffs allege that the Worthington Tank was defective when placed on the market due to inadequate warnings and defective components that failed to prevent the flow of excess and unsafe levels of propane gas into the trailer. (*Id.* at 38-44). Plaintiffs further allege that Worthington's conduct proximately caused the explosion as the Worthington Tank caused propane gas to leak into the trailer. (*Id.* at 39).

---

[1] On February 1, 2024, the parties attended a scheduling conference with the Court where it was discussed that defendants M.B. Sturgis, Inc., Coloma Food, Inc., and Grand Gas Equipment, Inc., would be dismissed from the action because they were erroneously added. (ECF No. 61). As these parties have been dismissed, and the unnamed Doe defendants have not been served, the Court recounts only the allegations against the remaining named defendants.

2

### B. Procedural History

Plaintiffs initiated this action on October 10, 2022, by filing a complaint in the Superior Court of California for the County of Los Angeles, East District. (ECF No. 4-1; *see also* ECF No. 4 at 2).[2] After filing an answer, Defendant Enerco filed a notice of removal on September 21, 2023. (ECF No. 1). The case was subsequently removed to the United States District Court for the Central District of California where on October 19, 2023, Defendant Enerco filed a motion to transfer the case to the United States District Court for the Eastern District of California. (ECF No. 20). The same day, Plaintiffs filed a motion to remand the case back to state court. (ECF No. 21). On December 28, 2023, the Central District Court granted Enerco's motion to transfer and terminated Plaintiffs' motion to remand as moot. (ECF No. 43).

At the request of the parties, the Court reinstated Plaintiffs' motion to remand on January 17, 2024, and it was thereafter referred to the undersigned for the preparation of findings and recommendations. (ECF Nos. 55, 69). On March 26, 2024, Defendant Worthington filed a notice of motion for determination of good faith settlement reached with Plaintiffs. (ECF No. 65).

After both motions were fully briefed, the Court held a joint hearing on June 14, 2024. (ECF No. 77).

### II. MOTION TO REMAND

On October 19, 2023, Plaintiffs filed a motion to remand. (ECF No. 21). The motion argues that Defendant Enerco's removal of this action to federal court was procedurally improper under 28 U.S.C. § 1446(b) because it was filed twenty-eight days after the statutory deadline. (*Id.* at 12). Specifically, Plaintiffs contend that the statutory deadline for removal began to run on July 25, 2023, after the state court approved Plaintiffs' settlement with Coloma Food, Inc., and Coloma dismissed its equitable cross-complaint. (*Id.* at 12, 16). Plaintiffs also argue that Enerco failed to establish complete diversity among the parties because Defendant Worthington has California citizenship. (*Id.* at 18). Lastly, Plaintiffs argue that Enerco has waived its right to removal by filing a procedurally defective motion to transfer venue in the state court action and removing the case before the motion could be resolved, as well as taking other affirmative actions

---

[2] Unless otherwise indicated, cited page numbers refer to the pagination appearing at the bottom of each page, not the blue numbers generated by the CM/ECF system.

in the state court proceeding that indicate their willingness to litigate there. (*Id.* at 19-21).

On November 30, 2023, Defendant Enerco filed an opposition, which was subsequently joined by Defendant Worthington. (ECF Nos. 33, 35).[3] Enerco's opposition argues that their removal was timely because it occurred within thirty days of the formal dismissal of the non-diverse party, Coloma Food, Inc., on August 31, 2023. (*Id.* at 3-7). Enerco also argues that there was complete diversity among the parties because Defendant Worthington is incorporated and has its principal place of business in Ohio. (*Id.* at 7-8). Lastly, Enerco contends that it did not waive its right to removal because it took no action in state court seeking adjudication on the merits prior to removal. (*Id.* at 9-10).

On December 7, 2023, Plaintiffs filed a reply to Enerco's opposition. (ECF No. 37). In addition to reiterating the arguments made in their motion to remand, Plaintiffs' reply contends that Enerco made inaccurate allegations in their opposition regarding Enerco's notice of Plaintiffs' settlement with Coloma and that the Court should not consider the declaration of Timothy Doney submitted in support of Enerco's opposition by Defendant Worthington. (*Id.* at 3-8).

**A. Legal Standards**

With some exceptions, a defendant may remove to the district court embracing the place where the action is pending "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). The complete diversity requirement is met when "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). "When an action is removed on the basis of diversity, the requisite diversity must exist at the time the action is removed to federal court." *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985) (citations omitted). "The 'strong presumption' against removal jurisdiction means that the

---

[3] Enerco filed numerous objections to evidence submitted in support of Plaintiffs' motion to remand. (ECF No. 34). The Court declines to rule on these or other objections made related to the motion to remand or motion for determination of good faith settlement. However, nothing in this order precludes the parties from objecting to the introduction of evidence at trial.

defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).

Generally, a defendant must file the notice of removal within 30 days of receiving the initial pleading "setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). Where an action was not initially removable upon its filing, the notice of removal must be filed "within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); *see also Caterpillar*, 519 U.S. at 62 ("In a case not originally removable from state court, a defendant who receives a pleading or other paper indicating the post-commencement satisfaction of federal jurisdictional requirements—for example, by reason of the dismissal of a nondiverse party—may remove the case to federal court within 30 days of receiving such information") (citing 28 U.S.C. § 1446(b)). If a case was not initially removable, it may not later be removed based on diversity jurisdiction "more than 1 year after commencement of the action." 28 U.S.C. § 1446(c)(1)). Section 1446 is strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("We strictly construe the removal statute against removal jurisdiction.") (citations omitted). The thirty-day time limit to file a notice of removal is "mandatory and a timely objection to a late petition will defeat removal." *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980); *see also Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9th Cir. 2007) ("If a notice of removal is filed after this thirty-day window, it is untimely and remand to state court is therefore appropriate") (citations omitted).

### B. Discussion

#### 1. Timeliness

In support of their argument that Defendant Enerco's removal was untimely, Plaintiffs rely primarily on *Hanahan v. John Hancock Life Ins. Co. (USA)*, 518 F.Supp.2d 780 (D.S.C. 2007), *Self v. General Motors Corp.*, 588 F.2d 655 (9th Cir. 1978), and *Southern Pac. Co. v. Haight*, 126 F.2d 900 (9th Cir. 1942). Plaintiffs argue, "as the Court in *Hanahan, Self*, and *Haight* make clear, removal jurisdiction based upon diversity is triggered by a voluntary act of Plaintiff, enforceable by the applicable state law, which demonstrates plaintiff's desire not to pursue the

5

case against the non-diverse party." (ECF No. 21 at 17). As such, Plaintiffs contend that the fully executed settlement agreement with Coloma Food, Inc., "extinguishing any other claims against Coloma," triggered the thirty-day statutory deadline for removal. (*Id.* at 16). Additionally, Plaintiffs cite to section 664.6 of the California Code of Civil Procedure, arguing that the enforceability of its settlement with Coloma Food, Inc. under that statute further evidenced their voluntary abandonment of claims against the non-diverse party. (ECF No. 21 at 15-17; *see also* ECF No. 37 at 9, 13-14).

In response, Enerco cites to several cases within the Ninth Circuit finding that removal was allowable only upon dismissal of a non-diverse party. *See, e.g.*, ECF No. 33 at 5-6 (citing *Self*, 588 F.2d at 659 (a case, nonremovable on the complaint, becomes removable only by, "[T]he voluntary amendment of [the] pleadings by the plaintiff or, where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by [the plaintiff] of a party or of parties defendant") (citations omitted); *Mertan v. E.R. Squibb & Sons, Inc.*, 581 F.Supp. 751, 752-53 (C.D. Cal. 1980) (requiring written dismissal before removal could be filed based on complete diversity); *Guerrero v. General Motors Corp.*, 392 F.Supp.2d 1133, 1134-35 (N.D. Cal. 2005) (rejecting defendant's argument that case was removable because of plaintiff's intent not to proceed against defendants, notwithstanding non-dismissal of non-diverse defendants and where minors' settlement had to be approved to be binding); *Dunkin v. A.W. Chesterson Co.*, No. C 10-458 SBA, 2010 WL 1038200, at *3[4] (N.D. Cal. Mar. 19, 2010) ("Courts within this District have followed *Mertan* and likewise ruled that a settlement is insufficient to confer removal jurisdiction where the formal dismissal of the non-diverse defendant has not yet been entered"); *Tyler v. Am. Optical Corp.*, No. LACV1602337JAKASX, 2016 WL 1383459, at *4 (C.D. Cal. Apr. 7, 2016) (dismissal of non-diverse settling party was required to confer removal jurisdiction)).

Further, during the hearing on this motion, Enerco offered additional arguments why Plaintiffs' settlement with Coloma did not render the case removable, including that the settlement agreement was not signed by Coloma, required a future action of payment to

---

[4] The Court notes Enerco's opposition cited to page 2 of *Dunkin*, which is believed to be in error.

6

Plaintiffs,[5] and only *authorized* dismissal of Coloma rather than dismissing Coloma itself.

After consideration, the Court finds that Enerco's Notice of Removal was timely. As discussed extensively at the hearing, there was no single document or order that conclusively dismissed the non-diverse defendant until the order of dismissal. *See Price trustee of Vivian Price Fam. Tr. v. AMCO Ins. Co.*, No. 117CV01053DADSKO, 2017 WL 4511062 at *2 (E.D. Cal. Oct. 10, 2017) ("Although the decision in *Self* does not definitively answer the question" whether a plaintiff's agreement to settle and dismiss all claims against only non-diverse defendant is enough to permit removal where formal dismissal has not been ordered, the *Self* decision "provides strong support for the conclusion that removal is improper until and unless the non-diverse defendant has been formally dismissed from the action"); *see also Schmidt v. Capitol Life Ins. Co.*, 626 F.Supp. 1315, 1318 (N.D. Cal. 1986) ("Section 1446(b) thus permits removal within 30 days of the pleading or other action by which the plaintiff unequivocally effects an abandonment of any resident defendants and thereby creates diversity . . . the defendant is entitled to await affirmative and certain action by a plaintiff confirming such abandonment before exercising the right of removal"). Accordingly, because Coloma, the non-diverse party, was not dismissed until August 31, 2023, and Enerco filed its notice of removal thereafter on September 21, 2023, the Court finds that Enerco timely filed for removal within the statutory deadline under 28 U.S.C. § 1446(b)(3).

### 2. Complete Diversity

The Court next turns to Plaintiffs' argument that Enerco failed to establish complete diversity among the parties. Specifically, Plaintiffs contend that they have produced unrebutted evidence that Defendant Worthington has a Los Angeles headquarters and is therefore a citizen of California and non-diverse from Plaintiffs.[6] Plaintiffs point to several pieces of evidence in

---

[5] Indeed, at the hearing, Plaintiffs' counsel explained that Plaintiffs did not file immediately for dismissal of Coloma because they "were waiting to get the settlement money before dismissing the claims." Hearing on June 14, 2024, Time Stamp 10:15:15 AM – 10:15:32.

[6] Plaintiffs submit two Requests for Judicial Notice related to the motion to remand. (ECF Nos. 21-33, 37-10). The items requested to be judicially noticed are online screenshots related to Defendant Worthington's WAVE facility located in Cerritos, California. (ECF Nos. 21-11, 37 at 6 (Figures 3 and 3A), 37 at 7 (Figure 4)). The Court declines to take judicial notice of these screenshots. As explained in this order, the existence of Worthington's WAVE facility and its location in California do not establish that Worthington is a California citizen for diversity purposes and are therefore irrelevant. *See Oregon Wild v. United States Forest Serv.*, No. 23-35579, 2024 WL 4286965 at *3 (9th Cir. Sept. 25, 2024) ("Evidence must be relevant to be admissible. Fed. R. Evid. 402. And we have repeatedly denied requests for judicial notice for lack of relevance") (citation omitted).

support and contend that Defendants "conceded venue was proper in State Court based upon Defendant Worthington's Los Angeles office and thus California citizenship." (ECF No. 21 at 18-19).

Plaintiff cites to no evidence in support of this statement, except in their statement of facts where they state, "Defendant Enerco did not dispute that venue was proper in Los Angeles," citing to Enerco's Reply to Plaintiffs' Opposition to Enerco's Motion to Change Venue. (ECF No. 21 at 11 (*citing* ECF No. 21-21 at 5)). However, the cited document indicates that Enerco argued that whether venue was proper in Los Angeles was irrelevant to their motion to transfer. (ECF No. 21-21 at 5).

The Court concludes that Enerco met its burden on removal. A notice of removal pleading must contain "a short and plain statement of the grounds for removal," which includes the jurisdictional basis for removal. 28 U.S.C. § 1446(a). To establish diversity jurisdiction, a removing party must adequately allege complete diversity of citizenship between the parties: every plaintiff must be diverse from every defendant. *See Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005). When the removing defendant's jurisdictional facts are challenged, they must be supported by "competent proof." *Gaus*, 980 F.2d at 567 (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936).

Here, Enerco's notice of removal states the jurisdictional basis for removal: complete diversity did not exist at the time Plaintiffs filed the complaint in state court but was created upon the voluntary dismissal of Coloma Food, Inc., and the amount in controversy is met based on Plaintiffs' prior settlements with previously dismissed parties. (ECF No. 1 at 2-3). But more importantly, Enerco has produced evidence rebutting Plaintiffs' contention that Worthington is non-diverse, in the form of Worthington's verified responses to Plaintiffs' form interrogatories. *See* ECF No. 33-6 at 2 (indicating Columbus, Ohio as the place of incorporation and listing "200 Old Wilson Bridge Road"[7] as the principal place of business).[8] Further, although Plaintiffs have produced evidence that Worthington has an office for a joint venture in Cerritas, California, this

---

[7] A Google search of this address pulls up "200 W Old Wilson Bridge Rd" located in Columbus, Ohio.
[8] Plaintiffs object to the declaration of Timothy Doney submitted in support of Enerco's opposition by Worthington, on the basis that Mr. Doney was never disclosed by Worthington as a witness. (ECF No. 37 at 17-18). The Court did not consider Mr. Doney's declaration in deciding this order and so declines to rule on this objection.

does not prove that Worthington was a citizen of California when the complaint was filed or the case was removed. *See Stroteck Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002) ("[R]emoval jurisdiction on the basis of diversity . . . is determined (and must exist) as of the time the complaint is filed and removal is effected") (citations omitted).

Accordingly, the Court concludes that Enerco met its burden in establishing complete diversity between the parties.

### 3. Waiver

Lastly, Plaintiffs argue that Enerco waived its right to removal because Enerco filed a procedurally defective motion to transfer venue in state court and took affirmative actions in state court. (ECF No. 21 at 19-20). Plaintiffs rely on their Opposition to Enerco's motion to transfer venue, which pointed out procedural defects, and primarily cite to California case law "which held that Enerco's failure to timely bring the motion amounted to a waiver of its ability to do so." (ECF No. 21 at 20). In response, Enerco, citing several cases within the Ninth Circuit, argues no waiver occurred because it timely filed for removal after dismissal of the non-diverse party, at which point it took no action manifesting an intent to further litigate the case in state court. (ECF No. 33 at 9).

A defendant may waive the right to removal "where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum." *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994) (citation omitted). Such a waiver must be "clear and unequivocal," and is therefore not manifested "when a party takes necessary defensive action to avoid a judgment being entered automatically against him." *Baghdasarian v. Macy's, Inc.*, No. 221CV04153ABMAAX, 2021 WL 4026760 at *7 (C.D. Cal. Sept. 2, 2021) (citations and internal quotation marks omitted). "Generally, a defendant does not forfeit its right to remove by action in state court short of proceeding to an adjudication on the merits." *Id.* (citations and internal quotation marks omitted).

Here, Plaintiffs argue that Enerco "affirmatively sought to transfer venue in the State Court action." (ECF No. 21 at 20). But Enerco's motion to transfer venue is dated July 5, 2023, more than two months before Enerco removed the action. (ECF No. 21-19 at 3; *see also* Docket

Entry No. 1 dated September 21, 2023). Consistent with the principle set forth in *Resolution Trust*, Enerco's motion to transfer did not constitute a waiver of their right to removal because the case was not removable when the motion was filed. Plaintiffs' point that Enerco failed to mention removal in their ex parte application to the state court to advance the hearing on their motion to transfer is likewise unavailing, as the ex parte application is dated July 6, 2023, just one day after the motion to transfer. (ECF No. 21-30 at 3). Moreover, a motion to transfer venue does not reach a case's merits. *See Gentle v. Richmond Police Dep't*, No. 222CV945KJMKJNPS, 2022 WL 3161992 (E.D. Cal. June 9, 2022) at *1 (observing that a motion to transfer may be addressed by a magistrate judge because it "does not address the merits of the case").

### III. MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT

Defendant Worthington moves for a determination that the settlement agreement between itself, Grand Gas, Equipment, Inc., and Plaintiffs is made in good faith within the meaning of California Code of Civil Procedure section 877.6. (ECF No. 65). Non-settling Defendant Enerco opposes the proposed settlement. (ECF No. 72).

Worthington and Plaintiffs each filed a reply to Enerco's opposition. (ECF Nos. 74, 75). Enerco filed objections to the evidence submitted in support of both replies. (ECF No. 76).

### A. Legal Standards

The Court applies California law to resolve Worthington's motion for determination of good-faith settlement. *See Mason and Dixon Intermodal, Inc. v. Lapmaster Intern. LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims. This court has held that California Code of Civil Procedure section 877 constitutes substantive law") (citations omitted).

Under California law,

> Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
>
> (a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration

>paid for it, whichever is the greater.
>
>(b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.
>
>…

Cal. Civ. Proc. Code § 877. As a check on the validity of settlement agreements that might affect joint tortfeasors, California law also provides a mechanism through which a settling tortfeasor can request a determination that the settlement is in good faith. Cal Code Civ. Proc. § 877.6(a)(1)-(2). Non-settling parties are thereafter given an opportunity to contest the settlement. Cal. Code Civ. Proc. § 877.6(a)(2). If the court determines that the settlement was made in good faith, such determination "shall bar any other joint tortfeasor from any further claims against the settling tortfeasor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." Cal. Civ. Proc. Code § 877.6(c).

A settlement is made in good faith under §§ 877 and 877.6 if it is within a "reasonable range" of the settling parties' proportionate share of liability to the plaintiff. *Tech-Bilt Inc. v. Woodward-Clyde & Assoc.*, 38 Cal.3d 488, 499 (Cal. 1985); *see also Torres v. Union Pac. R. Co.*, 157 Cal.App.3d 499, 508 (1984) (no good faith where defendant settles by paying sum "grossly disproportionate" to their fair share of damages). The California Supreme Court has held that "[t]he good faith provision of section 877 mandates that the courts review agreements purportedly made under its aegis to insure that such settlements appropriately balance the contribution statute's dual objectives." *Tech–Bilt*, 38 Cal.3d at 494. The dual objectives of the California statutory scheme are to provide for equitable cost-sharing among parties at fault and to encourage settlement. *Id.* In the determination of good faith, factors to be considered include:

>[A] rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants.

*Id.* at 499 (citation omitted).

A non-settling party who asserts a lack of good faith as to the settlement bears the burden of proof on that issue. *Id.*; Cal. Civ. Proc. Code § 877.6(d). The party "should be permitted to

11

demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to these factors to be inconsistent with the equitable objectives of the statute." *Tech-Bilt*, 38 Cal.3d at 499-500. The determination as to whether a settlement is made in good faith is a matter of the Court's discretion. *Id.* at 500.

**B. Discussion**

On March 26, 2024, Defendant Worthington filed a motion for determination of good faith settlement with Plaintiffs. (ECF No. 65). The motion indicates that Plaintiffs have agreed to dismiss their case with prejudice against Worthington and non-party Grand Gas Equipment, Inc. in exchange for $255,000, which is appropriate because "the evidence is clear that Worthington was not responsible, either in full or in part, for the cause of the accident. Nevertheless, because of the serious injuries and the expense of litigation, Worthington is willing to settle with Plaintiffs." (ECF No. 65-1 at 1, 5).

In support of the conclusion that Worthington was not responsible for the accident, Worthington points to the post-accident testing, which indicated that no propane gas leaked from the Worthington Tank when the hose was fully connected, and the testimony of Mr. Pierson indicating that he made sure the connection between the hose and Tank was secure and that the cylinder valve was closed when not in use. (ECF No. 65-1 at 3-4). Worthington also relies on the declaration of Malcolm Warren, Regional Quality Manager for Worthington. In his declaration, Mr. Warren explains that he inspected the propane cylinders involved in the accident, including the Worthington Tank. (ECF No. 65-2 at 2). Upon testing, Mr. Warren confirmed that no leak was observed from the Worthington Tank when the connecting hose was fully tightened. (*Id.* at 5). Because Mr. Pierson testified that he always fully connected the hose to the cylinder and closed the cylinder valve when it was not in use, Mr. Warren concluded that it was not possible for the Worthington Tank to leak at the time of the accident. (*Id.* at 5-6).

In support of the contention that the settlement was reached in good faith, Worthington addresses each of the *Tech-Bilt* factors. (ECF No. 65-1 at 6-8). In particular, Worthington argues that the $255,000 settlement is more than its proportionate share of liability when the evidence in fact demonstrates zero liability. (*Id.* at 7).

On May 16, 2024, Defendant Enerco filed an opposition. (ECF No. 72). Enerco argues

that the settlement fails to meet the good faith standards in *Tech-Bilt* considering "a rough approximation of Plaintiffs' potential total recovery, Worthington's/Grand's potential proportionate liability, Worthington's financial condition, and its available insurance coverage." (*Id.* at 2). Specifically, Enerco states that the settlement figure of $255,000 between Plaintiffs and Worthington "has no relation to their proportion of liability" compared to Plaintiffs' demand for $21 million from Enerco, particularly when Worthington and Grand could be "potentially liable for at least $8 million in damages." (*Id.* at 4, 11). Enerco further argues that allowing Worthington to settle with Plaintiffs will force Enerco to defend the case without the option of seeking indemnification from the party who was responsible for the propane leak. (*Id.* at 4).

In support of their arguments, Enerco points to the following: the post-accident testing; the deposition transcripts of Mr. Pierson and Malcolm Warren; the declaration of Brian Vandrak, Vice President of Engineering for Enerco; copies of settlement documents from state court; copies of mechanical liens totaling nearly $8 million; and a copy of Worthington's verified supplemental responses to interrogatories indicating Worthington has $150 million in available insurance coverage. Enerco primarily relies on the post-accident testing, which they assert reveals a leak from the Worthington Tank, with only a small leak from the Enerco heater and none at all when the heater was refitted with a new hose assembly. (*Id.* at 5-6). Enerco contends that Mr. Pierson's testimony about the length of time he and his wife spent showering, along with Mr. Vendrak's declaration and Mr. Warren's deposition, supports that the leak came from the Worthington Tank due to the volume of propane missing from it. (*Id.* at 6).

On May 23, 2024, Plaintiffs and Worthington each filed a reply to Enerco's opposition. (ECF Nos. 74, 75). Plaintiffs contend that Enerco's liability "is based upon its improper and illegal advertising/warranting" that its heater was safe for indoor use, and because Enerco chose not to settle, it must defend itself alone. (ECF No. 74 at 1-2). Further, because Enerco's heater was determined as the ignition source of the explosion, Plaintiffs contend that it is the cause of the accident. (*Id.* at 7). Plaintiffs submit numerous pieces of evidence in support, including but not limited to deposition transcripts, photographs of the Enerco heater and packaging, a copy of the Cal Fire Report regarding the investigation of the accident, Enerco's recall notice of the heater, and prior claims by other individuals related to the heater. Worthington's reply reiterates

13

the arguments made in its opposition and adds that Enerco conceded that there was a small leak between the Enerco heater and the connecting hose, while no leak was observable from the Worthington Tank when it was fully secured. (ECF No. 75 at 2-4). Worthington submits several pieces of evidence in support of its reply, including deposition transcripts, the declaration of Steven T. Gentry, President of Gentry Investigations Services LLC in rebuttal to the declaration of Brian Vandrak, and another declaration by Malcolm Warren.

After evaluating the relevant evidence and factors described above, the Court finds that the Worthington settlement was in good faith. It is undisputed that the settlement was the result of arms-length negotiations between Plaintiffs and Worthington. (ECF No. 65-3 at 2). The evidence offered in support of the conclusion that Worthington's liability is minimal or non-existent, particularly the declaration of Malcolm Warren relating to post-accident testing and the deposition testimony of Michael Pierson, is substantial and persuasive. Furthermore, Enerco admits that post-accident testing revealed a small propane leak between the Enerco heater and the connecting hose. (*See* ECF No. 72 at 5). The amount also reflects that a settlor should pay less in settlement than they would if they were found liable after trial.

Accordingly, the Court recommends finding that the settlement between Worthington and Plaintiffs was made in good faith.

IV. **CONCLUSION AND RECOMMENDATIONS**

For the reasons given, **IT IS RECOMMENDED AS FOLLOWS**:

1. Plaintiffs' motion to remand (ECF No. 21) be **DENIED**;
2. Defendant Worthington's motion for determination of good faith settlement (ECF No. 65) be **GRANTED.**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within thirty (30) days after service of the objections.

The parties are advised that failure to file objections within the specified time may result

in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __November 18, 2024__  /s/ *Erica P. Grosjean*
UNITED STATES MAGISTRATE JUDGE